# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KENNETH G. CHISHOLM,

                              Plaintiff,

     v.                                              Civil Action No. 11-1966 (BAH)


CATHY L. LANIER, Chief,
Metropolitan Police Department,

                              Defendant.


## MEMORANDUM OPINION


     Pending before the Court is the motion to dismiss filed by the defendant Cathy L. Lanier,

Chief of the Metropolitan Police Department.[1]  For the reasons discussed below, her motion will

be granted.

## I.  BACKGROUND

     The plaintiff joined the Metropolitan Police Department ("MPD") on January 19, 1975.

Compl. at 1 (page numbers designated by the Court).  After serving ten years as a radio

---

[1]     The Court presumes that the plaintiff intended to bring this action against the defendant
in her official capacity only.  The defendant cannot be held liable in her individual capacity
under either Title VII or the ADEA.  *See Hunt v. District of Columbia,* No. 02–7044, 2002 WL
1997987, at *1 (D.C. Cir. Aug. 29, 2002) (per curiam) (affirming dismissal of Title VII and
ADA claims against defendant in her individual capacity); *Smith v. Janey,* 664 F .Supp. 2d 1, 8
(D.D.C. 2009) ("The defendants are correct that there is no individual liability under Title VII,
the ADEA or the ADA."), *aff'd sub nom. Smith v. Rhee,* No. 09-7100, 2010 WL 1633177 (D.C.
Cir. Apr.6, 2010) (per curiam).

dispatcher, the plaintiff was transferred in May 1986 to the Communications Division Radio Shop where he served as an Electronic Technician for 22 years. *Id.* According to the plaintiff, his supervisor Sgt. Sherwin Bigelow behaved in an unprofessional manner and made offensive remarks to the plaintiff. *Id.* Consequently, in January 2008 the plaintiff "wrote a request to the Commanding Officer of the Telecommunications Division to be released from [Bigelow's] supervision." *Id.* After the plaintiff filed the complaint, Bigelow's "actions got worse;" his "weekly verbal assaults" continued, and the plaintiff "could do nothing right in his eyes," prompting the plaintiff to complain to the Director, Travis Hudnall, "but he seemed uninterested." *Id.* at 1-2.

The plaintiff describes an incident that occurred subsequently in 2008. Specifically, "[o]n April 30, 2008, while in an off duty status [the plaintiff] was having a dispute" with a neighbor who called the police. *Id.* at 2. Lt. Michael Smith, an officer against whom the "plaintiff made a complaint [previously] to the Citizens Complaint Center [,] sent 3 sergeants and 2 officers to [the plaintiff's] home." *Id.* Afterwards, the plaintiff notified the Watch Commander at MPD's Third District and emailed a complaint to the Chief of Police Cathy Lanier and Assist[ant] Chief Alfred Durham." *Id.* In addition, the plaintiff "filed a formal complaint against Lt. Michael Smith" alleging that Lt. Smith's response was "harassment." *Id.*

On May 6, 2008, the plaintiff and Senior Officer Washington were notified that they "would be transferred to the patrol division," *id.*, and on May 12, 1008, they were "assigned to the [F]irst [D]istrict . . . and given foot beats in downtown DC," *id.* at 3. "The very next day, [they] were told to report to the police academy for retraining." *Id.* The plaintiff was told "that no officer with the time (33 years and 39 years) respectively [he and Washington had served on the MPD] had ever been sent back to the academy for retraining." *Id.* Two weeks later, "two

younger [o]fficers were transferred to the Telecommunications unit," even though no other

officers besides the plaintiff and Washington had ever been transferred or reassigned from that

unit. *Id.* Instead, "[t]he remaining Officers and Sergeants have been allowed to remain and

retire from the Telecommunications unit." *Id.*

In November 2008, the plaintiff's doctor "placed [him] on medical leave . . . due to stress

and [his] blood pressure." *Id.* Although the plaintiff "had planned on working an additional 4

years," he "retired in January 2009." *Id.*

According to the plaintiff, his reassignment and Lt. Smith's response to the neighbor's

call for service occurred in retaliation for the plaintiff's complaints against two police officials.

*Id.* He filed a complaint of discrimination on April 18, 2009, the particulars of which stated:

> On or about January 19, 1975, D.C. Metropolitan Police
> Department hired me as a Police Officer. I subsequently was given
> the position/title of Police Officer/Technician. In January 2008 I
> wrote a request to be released from the supervision of Sgt. Bigelow
> due to unprofessional and offensive remarks he made. I spoke
> with the Director who listed and without warning transferred me
> out of the unit. I had seniority in the unit. I was the second officer
> with the most tenure. I had been in that unit since April 1976. I
> (age 54) and another Black officer (age 65) was [sic] prevented
> from transferring to another unit in lieu of being put on the streets
> in the patrol division.
>
> I believe that I have been discriminated against because of my race
> (Black American) and retaliated against, in violation of Title VII of
> the Civil Rights Act of 1964; and because of my age in violation of
> the Age Discrimination in Employment Act of 1967, as amended.

Compl, Ex. (Charge of Discrimination, EEOC Charge No. 570-2009-01323, dated April 18,

2009). The EEOC dismissed the charge because it was not timely filed. *Id.*, Ex. (Dismissal and

Notice of Rights, EEOC Charge No. 570-2009-01323, dated July 25, 2011). The plaintiff

received the EEOC's notice on July 27, 2011. *Id.*, Ex. (Letter from plaintiff to Mindy E.

3

Weinstein, Acting Director, Washington Field Office, Equal Employment Opportunity

Commission, dated July 28, 2011).

The Court construes the complaint as one raising claims under Title VII of the Civil

Rights Act of 1964 ("Title VII"), as amended, *see* 42 U.S.C. § 2000e *et seq.*, and the the Age

Discrimination in Employment Act ("ADEA"), as amended, *see* 29 U.S.C. § 621 *et seq.*  The

plaintiff demands damages of "$445,000.00 for mental stress, age discrimination and

retaliation," among other relief.  Compl. at 3.

## II.  DISCUSSION

There are "detailed procedures for the administrative resolution of discrimination

complaints, including a series of time limits for seeking informal adjustment of complaints [and]

filing formal charges," set forth in regulations promulgated by the EEOC.  *Bowden v. United*

*States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (citations omitted).   "Complainants must timely

exhaust these administrative remedies before bringing their claims to court."[2]  *Id.*  Generally,

"[a] charge [of race discrimination] shall be filed within one hundred and eighty days after the

alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).  If the complainant

"has initially instituted proceedings with a State or local agency with authority to grant or seek

relief from such practice . . ., such charge shall be filed . . . within three hundred days after the

alleged unlawful employment practice occurred."  *Id.*  Additionally, a complainant must file his

lawsuit within 90 days after the EEOC issues notice of its action on a complaint.  42 U.S.C. §

2000e-5(f)(1).  "Courts apply the ninety-day time limit strictly and will dismiss a suit for missing

---

[2]      Although the ADEA does not itself set forth time limits, once a complainant avails
himself of the administrative process, it is presumed that he will observe the applicable time
limits.  *See Rann v. Chao*, 346 F.3d 192, 196 (D.C. Cir. 2003).

the deadline by even one day." *Wiley v. Johnson,* 436 F. Supp. 2d 91, 96 (D.D.C. 2006) (citation

omitted); *see Woodruff v. Peters*, 482 F.3d 521, 525 (D.C. Cir. 2007).

"[T]he administrative time limits created by the EEOC erect no jurisdictional bars to

bringing suit.  Rather, functioning like statutes of limitations, these time limits are subject to

equitable tolling, estoppel, and waiver." *Bowden*, 106 F.3d at 437 (citing *Irwin v. Dep't of*

*Veterans Affairs*, 498 U.S. 89, 95-96 (1990)).  The Court will exercise its "equitable power to toll

the statute of limitations . . . only in extraordinary and carefully circumscribed instances," *Mondy*

*v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988), and application of the doctrine of

equitable tolling is solely within the court's discretion, *see Smith-Haynie v. District of Columbia,*

155 F.3d 575, 579 (D.C. Cir. 1998).

The defendant has moved to dismiss the complaint because the plaintiff failed to file his

complaint of discrimination at the administrative level and failed to file this lawsuit within the

applicable time limits.  *See generally* Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss at 5-7.

Based on the complaint, the last alleged unlawful employment action occurred on May 12, 2008,

the date on which the plaintiff was directed to report to the police academy for retraining in

preparation for his reassignment to foot patrol.  The plaintiff apparently submitted his charge of

discrimination to the District of Columbia Office of Human Rights on April 18, 2009,

approximately 341 days later.  *See* Compl., Ex. (Letter from plaintiff to Mindy E. Weinstein,

Acting Director, Washington Field Office, EEOC, dated July 28, 2011).  Although the plaintiff

received the EEOC's notice on July 27, 2011, he did not file this lawsuit until October 27, 2011,

approximately 92 days later.[3]

The plaintiff responds "that he filed his EEO complaint with the Metropolitan Police

Department in a timely manner," Pl.'s Opp'n to Dismiss Def.'s Mot. ("Pl.'s Opp'n") at 2, having

submitted a complaint to MPD's EEO Office, *id.* at 1, in June 2008 pursuant to General Order

201.09, *id.* at 2; *see* Compl., Ex. (Letter to M.E. Weinstein dated July 28, 2011).[4]  He avers that

it is the defendant's responsibility "to ensure that [MPD employees are] free from Harassment,

Retaliation, Age Discrimination, Hostile Work Environment, and Civil Rights violation[s]," and

that she "failed to protect the Plaintiff from such when officials under her command failed to

investigate [his] EEO claims against Sgt. Sherwin Bigelow."  Pl.'s Opp'n at 2.  The plaintiff

believes that the filing of a discrimination complaint with the MPD "would be sufficient."

Compl., Ex. (Letter to M.E. Weinstein dated July 28, 2011).  Only "[a]fter many months of

waiting for the [MPD's] response," and after placing "several calls throughout 2009 and 2010 . .

. in reference to the status of [his] complaint," was the plaintiff instructed "to contact the Federal

EEO office, which [he] did."  *Id.*, Ex. (Letter to M.E. Weinstein dated July 28, 2011).  Under

---

[3]     It is the practice of the Clerk of Court to date stamp each complaint and application to
proceed *in forma pauperis* upon receipt.  On review of the docket, the Court finds that the Clerk
received plaintiff's *pro se* complaint and application to proceed *in forma pauperis* on October
27, 2011, that the Clerk returned the papers to plaintiff because he had not completed the *in
forma pauperis* application, that plaintiff resubmitted his papers on November 1, 2011, that the
Court approved plaintiff's application to proceed *in forma pauperis* on November 4, 2011, and
that the Clerk officially docketed the complaint and  application on November 8, 2011.  The
Court treats the complaint as if it were filed on October 27, 2011.

[4]     The MPD has an internal complaint process for EEO complaints that an employee is
encouraged to use prior to exercising his "right to file an external complaint with the D.C. Office
of Human Rights within 15 days after receiving an unsatisfactory determination from the MPD
Diversity and EEO Compliance Unit" or, alternatively, a "complainant may also file a complaint
with the U.S. Equal Employment Opportunity Commission, or the U.S. Department of Justice
Office of Civil Rights."  GO-PER-201.09, *Equal Employment Opportunity* (Feb. 17, 2005) at 9
(https://go.mpdconline.com/GO/3160000.pdf).

these circumstances, and accepting the plaintiff's factual allegations as true, the Court deems the plaintiff's complaint of discrimination with the EEOC timely filed.

There are no circumstances, however, to excuse the plaintiff's failure to file this lawsuit within the allotted 90-day period.  Missing from the plaintiff's opposition is any argument or other basis on which the Court might deem this civil action timely filed.  The plaintiff does not argue that the limitations period is subject to equitable tolling by, for example, asserting that the defendant "engaged in affirmative misconduct, or misled [him] about the running of a limitations period," *Washington v. Wash. Metro. Area Transit Auth*, 160 F.3d 750, 752-53 (D.C. Cir. 1998) (quotations and bracket omitted), or otherwise describe "extraordinary and carefully circumscribed circumstances," *Norman v. United States,* 467 F.3d 773, 776 (D.C. Cir. 2006), which might warrant this equitable remedy.

Because the plaintiff failed to timely file the complaint in this case, his discrimination and retaliation claims are time-barred.  *See Gill v. District of Columbia*, _ F. Supp. 2d _, _, 2012 WL 2552733, at *4 (D.D.C. July 3, 2012) (dismissing Title VII and ADEA claims because the plaintiff filed her complaint 92 days after receiving the EEOC's right-to-sue letter); *Uzoukwu v. Metro. Washington Council of Gov'ts*, 845 F. Supp. 2d 168, 172 (D.D.C. 2012) (notwithstanding the tolling of the 90-day limitations period while application to proceed *in forma pauperis* was pending, complaint dismissed as untimely).

III.   CONCLUSION

The Court concludes that the plaintiff's discrimination and retaliation claims are time-barred, and, therefore grants the defendant's motion to dismiss.  An Order accompanies this Memorandum Opinion.


/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge

DATE:  September 19, 2012